## LUZERNE COUNTY.

JANUARY TERM, 1881, No. 33.　　　　　　　APRIL 12TH, 1882.

# School District of Denison Township *versus* Shortz et al.

1. Where at a regular meeting of a board of school directors, the names of those present are entered on the minutes, and it is noted that a resolution for the purchase of a school lot was passed unanimously, it is a substantial compliance with the provisions of section 4th, of the Act of April 11th, 1862 (P. L., 472), though the names of those voting for the resolution were not entered.

2. An indebtedness of a school district for materials supplied in the erection of a school-house, is not within the provisions of section 8th, article 9th, of the Constitution, and the Act of April 20th, 1874 (P. L., 65), if at the time the contract is made, the district has a surplus of assets over liabilities, though subsequent contracts for the completion of the building extended the indebtedness to an amount beyond two per cent. of the assessed valuation, there being no proof that the directors then had in contemplation such an increase of the debt.

3. Where a vacancy in a school board is filled by appointment, by the remaining members of the board, and the appointee acts as a director, and is recognized as such, and part of the time is president of the board, an order signed by him as president for the payment of money due to a third person is binding upon the school district.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Luzerne County.*

Assumpsit by Edwin Shortz, Albert Lewis, Elisha P. Wilbur, Robert Lockhart, Robert H. Sayre, and Robert A. Packer, trading under the firm name of Shortz, Lewis & Co.,

[School District of Denison Township *v.* Shortz *et al.*]

against the school district of Denison Township, to recover for lumber sold and delivered.

.The case was referred, under the Act of 1869, and its supplements, to A. H. Dickson, who found the facts as follows:

On the 11th December, 1875, the directors of the Denison school district at a regular meeting, at which five out of the six directors were present, adopted a resolution unanimously that the district purchase from a Mrs. Whalen two building lots for $250. The names of the directors voting are not entered on the minutes in connection with this resolution. The names of the directors present are given, being five out of six, and the fact that the resolution was carried unanimously is stated. Subsequently, on the 30th April, 1876, at a full meeting of all the directors, it was resolved that " we are all of us satisfied with the location of lots," etc. No names were given then, but stated simply as above. A deed was made by Mrs. Whalen to the district for these lots, and the purchase-money paid her in full by the district prior to June, 1876. On the 25th of March, 1876, a building committee was appointed, consisting of three members of the board. On the 22d of May, 1876, there being five members present, at a regular meeting of the school board the building committee were authorized " to buy lumber for the new school-house and give note on district for amount." In June, 1876, this committee called on Edwin Shortz, one of the firm of plaintiffs. They informed him that they were a committee appointed by the school board to purchase lumber for a new school-house they were about to erect; that no money was then in treasury to pay for lumber, but they would give him orders. Shortz agreed for himself and firm with this committee to furnish all lumber necessary for the building. The price was fixed, and the lumber was supplied by Shortz, Lewis & Co. to the extent of $675.18, beginning to deliver September 19th, 1876, and by E. Shortz to the extent of $433.84, making in all $1109.02 on this contract.

On the 10th of February, 1877, an order of the school district was signed by John O'Day, president, Michael McDermott, secretary, and accepted by Thomas Cummins, treasurer, to Shortz, Lewis & Co., for this $675.18. Payment was demanded of the treasurer and refused prior to bringing this suit. The old school-houses and one lot were sold after the new school-house was built. One lot, however, is still retained by the district.

On the 30th of April, 1876, S. Rehrig, one of the members of the school board of Denison Township, resigned. Rehrig's term of office did not expire until June, 1877. On the

[School District of Denison Township *v.* Shortz *et al.*]

2d June, 1876, at a regular meeting of the board, John O'Day was appointed in the place of Rehrig, under the 7th section of the Act of 8th May, 1854 (P. L., 618). O'Day continued to act as a member of the board until the qualification of his successor, elected at the next spring election in 1877. He was elected president of the board in September, 1876, and held that office the remainder of the school year, and as such signed the orders, including the one to Shortz, Lewis & Co., for $675.18, and three to E Shortz for $433.80. The organization of the school board for the school year beginning June, 1876, was delayed by a contest over the offices of directors. The matter was brought into Court, and they were directed by the Court of Equity to organize on September 14th, with certain numbers, which they did. On the 14th September, 1876, being the first meeting of the school year, there was levied a tax of thirteen mills on the dollar for building purposes, on the assessed valuation of Denison Township, which, in 1875, was $96368, and in 1876, $94064. Of this sum $10910 was an assessment on trades, occupations, etc., under the Act of April 15th, 1834 (Purdon, P. L. 1358, sec. 5). The balance of building tax over the current expenses for the year 1875 was $384.48, for the year 1876 was $871.60, and a further sum of $242.78, so that the total assets for the district, at the close of 1876, were $1498.86.

The liabilities of the district were somewhat obscure. It appeared from the stubs in the order book that the total orders from January 3d, 1876, to June 4th, 1877, amounted to $6696.78. What orders were paid, or when the indebtedness was contracted, did not appear. There was testimony that of this sum, $894.45 was for current expenses, and $5802.83 was for the purchase of lots, and matters pertaining to the school building.

The minutes showed contracts for the new school-house during 1876, making a total of liabilities amounting to at least $4862.82. This left an indebtedness at the completion of the new school-house building of $3363.96, more than two per cent. on the assessed valuation. The indebtedness, at the completion of the building, was more than two per cent. and less than seven per cent. on the assessed valuation.

In June, 1876, at the time the debt in suit was contracted, the district had paid all of its existing matured indebtedness. The amount of contracts then entered into, including those of the plaintiffs, was $1386.94, and this sum, deducted from the total assets of $1498.86, left a balance of assets over the then liabilities of $111.92.

The referee found as a fact that the lumber, for the pay-

ment of which this suit was brought, was used in building a new school-house upon a new location, and that the plaintiffs knew such to be the case when the lumber was sold and delivered.

The referee found as matter of law:

1st. That O'Day was a member of the school board *de facto*, and his acts binding on the district, so far as they were within his powers as director.

2d. That the requirements of the Act of 11th April, 1862 (sec. 4, Purd. Dig., 242, pl. 36), in relation to the location of the new school-house, were substantially complied with,— the vote of a majority of the full board being unanimous: Tobin *v.* Morgan, 20 P. F. Smith, 229.

3d. That the contract with Shortz, Lewis & Co. was binding between the parties when the agreement was made with the committee in pursuance of the resolution of the board, to wit, in June, 1876.

4th. That no indebtedness within the meaning of the Act of 20th April, 1874, as defined in section 5 of said act, was created by that contract, and the judgment should be entered for the plaintiffs for $798.24, being the amount of the claim of $675.18 with interest.

The defendant filed exceptions to the report, which the Court below, RICE, P. J., overruled, filing the following opinion:

" 1. The resolution for the purchase of the school lot was passed unanimously, the names of the directors present were entered on the minutes, and it was a regular meeting. This was a substantial compliance with the Act of April 11th, 1862 (Pamph. Laws, 472; Purd. Dig., 242, pl. 36), even conceding that an irregularity in the proceedings would affect a subsequent contract made by the plaintiffs to furnish materials for the erection of a school building on the said lot. 'The act evidently contemplated that the ayes and noes should be recorded only when there were members voting both in the affirmative and negative:' Tobin *v.* Morgan, 20 Smith, 229.

" 2. In May, 1876, the building committee was authorized by the board ' to buy lumber for the erection of a new school-house, and give a note on district for amount;' and in June, 1876, the committee, in pursuance of this resolution, entered into an agreement with the plaintiffs, and Edwin Shortz individually, to furnish the defendant all the lumber ' necessary' for the building. The price of the lumber, although not its aggregate amount and cost, was agreed upon, and it was also agreed that the plaintiffs should take orders. The plaintiffs furnished the lumber, and now bring suit for its

[School District of Denison Township v. Shortz et al.]

price. The lumber was furnished as it was needed from time to time, between September, 1876, and April, 1877. The main defence before the referee was that this was part of an indebtedness incurred by the school district in excess of two per centum upon the assessed value of the taxable property, as fixed and determined by the last preceding assessed valuation, without compliance with the provisions of the Act of April 20th, 1874 (Pamph. Laws, 65; Purd. Dig., 1928). From the referee's report upon the facts, and they are not excepted to, we find that this contract with the plaintiffs did not increase the debt one dollar, as the term 'indebtedness' is defined in section 5 of the Act of 1874, for adding to its gross amount all other debts for which the district was then liable, though to come due in the future, and deducting this sum from the money in the treasury, added to the revenues applicable within one year to the payment of the same, there would remain a surplus of assets over liabilities of $111.92. This being the case, how can this contract be declared unlawful, even though by subsequent engagements of the district there occurred an increase of the indebtedness beyond the two per cent. ? Such subsequent contracts and engagements ought not to have the effect of relating back and vitiating every previous contract made in good faith, and to meet which there was money in the treasury or current revenues applicable to its payment. The language used by Judge Gordon, in Appeal of the City of Erie (MS.), is exactly applicable here: ' If the contracts and engagements of municipal corporations do not overreach their current revenues, no objections can lawfully be made to them, however great the indebtedness of such municipalities may be, for in such case their engagements do not extend beyond their present means of payment, and so no debt is created.' The case cited is important, also, in determining when the debt, if any, was incurred. The city of Erie entered into an agreement with certain parties for the erection of a markethouse, by the terms of which the city would become liable to pay the sum of $1500 or $3000 annually for twenty-five or thirty years, depending on the cost of the structure. The learned judge says: ' Now a debt means a fixed and certain obligation to pay money, or some valuable thing or things, either in the present or in the future,' and for the reason that the contract increased the debt of the city, in violation of section 8, article ix., of the Constitution, beyond seven per centum of the assessed value of the property, he declared it to be unlawful. Now, if this decision means anything, it is that the debt was incurred when the engagement was entered into, and its lawfulness or unlawfulness must be deter-

mined by the condition of the city's indebtedness at that time, and the city's then ability to pay from its current revenues. So we think the present contract must be judged by the other indebtedness of the district at the time it was entered into, and the ability of the district to meet all such indebtedness by its current revenues or the money in its treasury; and it appearing, as has been shown, that they were sufficient, after deducting ordinary expenses, to meet their engagements, and still have a surplus, the contract was not unlawful, and the district is liable.

"3. But assuming for a moment that, when this contract was entered into, it was in the contemplation of the school directors to build a school house, by which the debt would be increased beyond the ability of the revenues to meet it, and that the plaintiffs knew of this purpose, we do not say that they could recover, provided it was the present purpose to exceed two per centum of the assessed valuation, and there was a failure to comply with the provisions of the Act of 1874. In that case it would seem they ought to stand or fall with the other creditors, knowing, as the case supposes they did, that their contract with the directors was part of an illegal transaction, although it, standing alone, might not constitute an illegal increase of the indebtedness. But it is not necessary to decide that question here, for the facts do not raise it. There is no proof that the directors had in contemplation such an increase of the debt when they contracted with the plaintiffs, and, although the referee has found that the final cost of the school building did create an indebtedness in excess of two per cent., yet it does not appear that this cost was made necessary by the plans upon which the work was begun, and of which the plaintiffs had knowledge when they entered into their engagement with the district.

"4. John O'Day was a *de facto* member of the board at least. He was appointed under color of authority, and acted and was recognized as a director, being part of the time president of the board. This being the case, his acts as such director and president were binding on the district, so far at least as the public and third persons were concerned.

"The exceptions are overruled, the report confirmed, and judgment entered in accordance with the referee's finding."

The defendant then took out a writ of error, assigning as errors that the Court erred in overruling the exceptions, and in directing judgment to be entered as found by the referee.

*E. S. Osborne*, for plaintiff in error.

The names of the members of the board voting in the

[School District of Denison Township v. Shortz et al.]

affirmative and negative are not entered in the minutes, as required by section 4th of the Act of April 11th, 1862.

1. To allow the claim would be to abrogate this statute.

2. It represents an indebtedness incurred in violation of section 8th, article 9th, of the Constitution, and the Act of April 20th, 1874.

1. By the Act of 11th April, 1862, no school-house shall be located, or its location abandoned or changed, except by the affirmative vote of a majority of the whole number of the directors or controllers thereof; and in each of said cases the names of the members voting, both in the affirmative and the negative, shall be so entered on the minutes of the board by the secretary. This act is mandatory, and must be strictly followed. By it something is required to be done, and the act is specific in pointing out the manner in which it shall be done. Its purpose was to prevent jobbery, and the exercise of one man power: School District v. Padden, 8 Norris, 395.

2. Before any indebtedness exceeding two per centum could have been authorized, it was necessary that a vote should be taken in the manner pointed out by the Act of April 20th, 1874, by the directors, and duly recorded. A statement under oath must be filed. The Constitution requires that the assent of the electors must be obtained. This claim is part of an indebtedness incurred in the erection of a school-house. The debt is to be ascertained by taking into the account all the bills and items necessary which the district had to buy on credit. To single out this bill, and compare it alone with the amount realized from the tax duplicate, is only a clear way to avoid the statute and violate the Constitution: Pike County v. Rowland, 9 W. N. C., 241.

*Joseph D. Coons*, for defendants in error.

The provisions of the Act of April 11th, 1862, do not apply to contracts of this nature. The instances upon which the act was intended to operate are distinctly specified therein. The only application that it can have, by the strictest construction, to affect this particular case, is in reference to the location of the school-house. And, if it be held that a compliance with its provisions was necessary in that direction, the method of recording the ayes and noes of the members of the school board upon the minutes is fully explained by the ruling of this Court in Tobin v. Morgan, 20 P. F. Smith, 229.

It is evident from the Act of 1874, as well as from the language of the 8th section of the 9th article of the Constitution, that only permanent debts created by loans, to be paid

at some future fixed time, were contemplated by this legislation. It was not intended to apply to the ordinary current expenses which a municipality might incur in providing for its wants and necessities: Appeal of the City of Erie, 10 Norris, 403.

The district was not in debt, but had a surplus of funds in its treasury when the contract was made There is no evidence that, at that time, the directors intended or contemplated increasing the debt beyond two per centum of the valuation.

APRIL 24TH, 1882.—PER CURIAM: This judgment is affirmed upon the opinion of the learned Court below.

Judgment affirmed.